IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DEWANE PARKER, | : | Honorable Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 15-cv-08712 |
| v. | : | OPINION |
| ATLANTIC CITY BOARD OF EDUCATION, BARRY CALDWELL, JOHN DEVLIN, DONNA HAYE, AND PAUL SPAVENTA, | : | |
| Defendants. | : | |

This matter is before the Court on Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Oral argument on the motion was heard December 4, 2017 and the record of that proceeding is incorporated here. For the reasons placed on the record that day, and those articulated here, the motion will be granted in part and denied in part.

## Background

Plaintiff DeWane Parker held the position of Atlantic City's School District's Supervisor of Security from May 9, 2001 to June 30, 2015. By all accounts, Plaintiff was a competent and qualified supervisor with no performance issues. He alleges he was terminated for refusing to participate in School Board politics and for repeatedly objecting to violations of law and policy within the District. Beside the Atlantic City

1

Board of Education, Plaintiff named as Defendants his direct supervisor Barry Caldwell, Assistant Superintendent of the Atlantic City School District, John Devlin, School Board President, Donna Haye, Superintendent until May 2015, and Paul Spaventa,[1] Interim Superintendent beginning July 1, 2015.

Defendants maintain that Plaintiff's termination was part of a reduction in force. On February 19, 2015, the State of New Jersey appointed a Monitor to oversee the District's operations. (McCartney Dep. 17:20-18:12.) He served in this role for a year, until February 2016. (McCartney Dep. 17:20-18:12.) The Monitor was directed to "[r]educe the budget [for the District] and make [it] fiscally responsible. Analyze every fiscal decision that's made there and don't approve any event [ ] not in keeping with responsible actions." (McCartney Dep. 33:1-10.) The District required $20 million in State assistance to meet its minimum tax levy for the upcoming school year. (McCartney Dep. 27:13-28:24; 72:1-16.) He did not focus exclusively on a reduction in force to reduce costs; rather, he looked at the utility of every operation within the District including, but not limited to, scrutinizing all of the District's expenses; reviewing all purchase orders;

---

[1] Spaventa had no prior experience with the District and did not know any of the litigants when he was hired. (Spaventa Dep. 34:12-15; 36:8-37:9; 44:21-45:10; 45:15-20; 48:24-49:10.)

looking at all District buildings to see if consolidation was possible; working with real estate agents to explore the possibility of selling vacant buildings; exploring the possibility of moving the Board's office to a new, less expensive space; investigating moving the location of the alternative school; scrutinizing the cost of food services for the students as well as the Board; examining transportation to determine whether busing could be handled more efficiently; and exploring whether the deployment of District personnel could be altered to cut costs. (McCartney Dep. 33:11-34:20.) However, his analysis of the Board's operations and fiscal situation led him to conclude that non-personnel related cuts alone would be insufficient to stem the Board's financial crisis. (McCartney Dep. 39:12-18.)

Plaintiff requested a Donaldson Hearing before the Board to discuss the decision to eliminate his position in the RIF. (Perla Decl., ¶18, Exh. J.) The Board granted Plaintiff's request. (Id.) On June 29, 2015, at a Special Meeting of the Board, seven Donaldson Hearings were conducted for non-tenured employees that had previously been non-renewed. (Perla Decl., ¶18, Exh. J.) Plaintiff attended this hearing. (Perla Decl., ¶18, Exh. J.) The Board, with then-President Devlin and Board members who Plaintiff claims Caldwell supported, voted to reinstate Plaintiff along with six other employees. (Pl. Dep. 273:4-274:18; Perla Decl., ¶18, Exh. J.) Only July 1,

2015, the State Monitor overruled the Board's June 29, 2015 decision to reinstate Plaintiff and the six other employees. (Pl. Dep. 273:4-274:18; McCartney Dep. 144:10-145:24; Perla Decl., ¶18, Exh. J.) As a result, none of these employees were reinstated. (Id.)

Spaventa was in the first week of his employment with the District when Plaintiff took the District's vehicle from District grounds after he had been terminated. (Caldwell Dep. 124:2-21; Spaventa Dep. 50:9-51:7; 51:22-52:4; 52:10-19; 54:5-10; 64:6-11; 71:4-23; 74:3-75:16; 83:3-7.) According to Caldwell, he met with Spaventa and the Monitor and, "in a show of restraint," they agreed to call the Atlantic City Police Department so an officer who knew Plaintiff could contact him and ask him to return the District property still in his possession. (Caldwell Dep. 119:24-120:25; Spaventa Dep. 53:4-54:10; 54:24-56:24; 59:23-60:7; 61:3-8.)

Only July 9, 2015, Spaventa filed a complaint with the ACPD to insure Plaintiff returned the District's property. (Spaventa Dep. 65:7-22; 69:18-71:3; 72:25-73:7; 75:10-18; 93:8-23; 99:4-100:19; 167:16-24.) While at the ACPD, Spaventa informed the police officer taking the information that he would dismiss the Complaint once Plaintiff returned the items. (Spaventa Dep. 70:15-71:3.) Deputy Chief Tim Friel left Plaintiff a message on July 9, 2015; told him the District was filing a complaint against him for theft; and

4

told him to return "keys" and "anything" to the State Monitor. (Pl. Dep. 285:15-286:4; 352:18-25.) Spaventa was not aware at the time he filed the Complaint that one of the items listed (an iPad) had been returned by Plaintiff two days earlier. (Spaventa Dep. 73:20-74:2; Perla Decl., ¶27, Exh. S.) The complaint was dismissed two weeks after Plaintiff returned all of the items. (Id.)

The State Monitor relied on the District's administrators, such as the Superintendent and Assistant Superintendents, to determine how the District would solve any issues raised by the decreased level of personnel. (McCartney Dep. 69:6-70:4; 119:24-120:16; 121:7-122:19.) He left it to the District to determine how it would supervise ground-level security personnel in the absence of the Supervisor of Security and Truancy position. (Id.)

Shortly after Plaintiff was terminated, Defendants advertised for a new position, Coordinator of Public Safety ("Coordinator") to oversee security in the District. (Pl. Dep. 296:12-23; Caldwell Dep. 147:25-148:22.) Plaintiff felt that the Coordinator position was essentially the same job as the Supervisor of Security position he formerly held. Accordingly, Plaintiff argues that the reinstatement of this supervisory position supports his claim that he was "lumped in" with an otherwise valid RIF to cover his

allegedly unlawful termination. Plaintiff applied to the Coordinator of Public Safety position, listing the RIF as the reason he left his prior position. (Pl. Dep. 296:24-297:2; Perla Decl., ¶29, Exh. U.) Caldwell was solely responsible for screening all applicants for the Coordinator of Public Safety position and made the decision not to interview Plaintiff for the job. (Caldwell Dep. 161:22-162:12.) Plaintiff filed this lawsuit on December 17, 2015, alleging he was terminated and not re-hired because of discrimination and retaliation.

## Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a). Thus, the Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. <u>Id.</u> In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Id.</u>; <u>Maidenbaum v. Bally's Park Place, Inc.</u>, 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. <u>Andersen</u>, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague

statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## Discussion

Although the Amended Complaint alleged racial discrimination, Plaintiff has elected not to pursue those claims. Summary judgment will therefore be granted on all claims of racial discrimination.

CEPA

Count Two of the Amended Complaint alleges that Defendants terminated Plaintiff's employment as District Supervisor of Security and Truancy in retaliation for his whistleblowing actions in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1. To establish a prima facie case under CEPA, a plaintiff must demonstrate that (1) the aggrieved employee reasonably believed that the employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity; (3) an adverse employment action was taken against him; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. Dzwonar v. McDevitt, 177 N.J. 451, 462 (2007). The complained-of activity "must have public ramifications, and . . . the dispute between the employer and employee must be more than a private disagreement." Maw v. Advanced Clinical Commc'ns, Inc., 179 N.J. 439, 445 (2004).

Plaintiff argues that there were nine whistleblowing incidents over the course of his employment. (1) Plaintiff was pressured into helping Caldwell run election campaigns for Board members in July of 2014 and in 2009 was told he should become "more political" in violation of his right to

refrain from supporting a particular candidate for public office. (2) In August 2014, Caldwell refused to fill open security officer positions until after the elections so that he could fill them with supporters, but hiring decisions involving low-level public employees based on party affiliation and support are unconstitutional. (3) Plaintiff informed Haye in November 2012 that Caldwell padded his overtime hours worked for Sandy relief, which could be interpreted as theft by Caldwell. (4) Devlin violated Plaintiff's right to privacy when he used his position as a police officer to disclose private information about Plaintiff to Superintendent Fred Nickles in 2011. (5) Plaintiff objected Brown's threat to fire him for activating the fire alarms. (6) In May 2014, Caldwell stripped Plaintiff of his student attendance officer duties to unlawfully open that position for a political friend. (7) Plaintiff complained that the Board hired a white male as supervisor of facilities, but paid him substantially more than Plaintiff, who is African-American. (8) Plaintiff objected to Caldwell's effort to cover up his own inappropriate behavior by urging Plaintiff in October 2014 to return the money he earned during Hurricane Sandy; doing so would unjustly enrich the Board. (9) Plaintiff disclosed to Haye that in February 2012, Caldwell threatened to fire Plaintiff if he did not help convince

Nickles to stay on as superintendent (for Caldwell's personal benefit); Nickles did not seek renewal.

Essentially, Plaintiff claims that he was terminated as the result of Caldwell's failure to recommend to the Monitor keeping Plaintiff in his position. Caldwell's silence/inaction allegedly was in retaliation for Plaintiff complaining that (1) Caldwell left open four security positions for political allies, and (2) Caldwell pressured Plaintiff to campaign for school board members. While the defense argues that Caldwell was not involved in the decision to terminate Plaintiff and Plaintiff was terminated for reasons unrelated to those he has presented, the circumstance that the Board created an almost identical position to the one eliminated when Plaintiff was terminated creates a genuine issue of material fact as to the legitimacy of his termination. Summary judgment will be denied as to the CEPA claim.

Constitutional Claims

Count Three presents Federal and State Constitutional Claims, alleging that Devlin and Caldwell's improper activities and practices were matters of public concern and Defendants violated "Plaintiff's right to freedom of speech, expression and association." (Am. Compl. ¶ 84.) Count Four alleges that by the retaliatory termination, Devlin, Caldwell, and Haye, as policy makers, violated "Plaintiff's rights of freedom of speech and

association in violation of the First Amendment." (Am. Compl. ¶ 92.) Count Five implicates the New Jersey Civil Rights Act and alleges violations of Plaintiff's substantive due process and equal protection rights and "his right to freedom of speech and his right to freedom of political association." (Am. Compl. ¶ 100.)

"A public employee has a constitutional right to speak [as a citizen] on matters of public concern without fear of retaliation." <u>Baldassare v. State of N.J.</u>, 250 F.3d 188, 195 (3d Cir. 2001). A public employee's retaliation claim for engaging in protected activity is evaluated under a three-step process. <u>Green v. Phila. Hous. Auth.</u>, 105 F.3d 882, 885 (3d Cir. 1997). First, the plaintiff must establish the activity in question was protected. <u>Holder v. City of Allentown</u>, 987 F.2d 188, 194 (3d Cir. 1993). To do so, the employee must demonstrate that (1) he spoke as a citizen, not as an employee; (2) the speech involved a matter of public concern; and (3) the government lacked an adequate justification "for treating the employee differently than the general public based on its needs as an employer." <u>Dougherty v. Sch. Dist. of Phila.</u>, 772 F.3d 979, 987 (3d Cir. 2014). Second, the plaintiff must show the protected activity was a substantial or motivating factor in the alleged retaliatory action. <u>Baldassare</u>, 250 F.3d 195. Third, the public employer can rebut the claim by

demonstrating "the same action would have been taken even if the speech had not occurred." <u>Dougherty</u>, 772 F.3d at 986 (citing <u>Gorum v. Sessoms</u>, 561 F.3d 179, 184 (3d Cir. 2009)). The second and third stages of this analysis present questions for the fact finder.

Plaintiff has alleged that his complaints to Haye regarding Defendants' actions, including improper requests to support political candidates and holding vacant security positions open for persons aligned with certain elected Board members were protected and of public concern. He also cites to the activity of objecting and refusing to participate as inciting retaliation for the exercise of his rights, including in the form of failing to interview or hire Plaintiff for the new position of Coordinator of Public Safety.

While the Board argues that Plaintiff was terminated for reasons unrelated to those Plaintiff has argued, the circumstance that it created an almost identical position to the one eliminated when Plaintiff was terminated creates a genuine issue of material fact. Summary judgment will be denied as to the Constitutional claims alleging retaliation for Plaintiff's exercise of free speech, expression, and association.

Miscellaneous State law claims

Count Six alleges intentional and/or negligent infliction of emotional distress. Count Seven alleges malicious prosecution by Spaventa in filing a criminal complaint. Count Eight states that the Board's Counterclaim to his State lawsuit regarding overtime pay constituted abuse of process. Plaintiff has not established a prima facie case on these claims, and summary judgment will therefore be granted in Defendants' favor on these claims.

Conclusion

For these reasons, as well as those discussed during oral argument, Defendants' motion for summary judgment will be granted in part and denied in part. An appropriate Order will be filed.

Dated: March 19, 2018  /s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.